**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **In re: Motion to Quash Non-Party Subpoena to Jabbok Schlacks** | **Misc. Case No.** |

**MEMORANDUM IN SUPPORT OF NON-PARTY JABBOK SCHLACKS'S**
**MOTION TO QUASH PLAINTIFF'S SUBPOENAS**

Jabbok Schlacks ("Mr. Schlacks"), by and through the undersigned counsel, provides the following memorandum in support of his motion to quash a subpoena *duces tecum* ("Document Subpoena") and a subpoena to attend and testify ("Deposition Subpoena") (together, the "Subpoenas"). The Subpoenas, which were served on September 20, 2021 and one of which purports to require compliance with an electronically stored information ("ESI") search by September 27, 2021 at 5 p.m. Central Standard Time, are attached as Exhibit A.

**INTRODUCTION**

Mr. Schlacks files this miscellaneous action in the United States District Court for the Eastern District of Missouri for the purpose of requesting relief from the Subpoenas, which were issued from the United States District Court for the District of New Jersey in the case *Sunbelt Equipment Rentals, Inc., v. Michael Love*, Civil No. 1:20-cv-17611-RMB-AMD (the "*Love* Litigation"). Mr. Schlacks is not a party to the *Love* Litigation. The Subpoenas should be quashed for at least three reasons.

*First*, the Subpoenas are intended to harass. Mr. Schlacks is the CEO of EquipmentShare.com Inc ("EquipmentShare"), a direct competitor of Sunbelt Rentals, Inc., the plaintiff in the underlying litigation. Neither Mr. Schlacks nor EquipmentShare are parties to the underlying litigation. Although the Subpoenas are directed to Mr. Schlacks personally, the Document Subpoena improperly seeks corporate records of EquipmentShare from an individual

employee, and the Deposition Subpoena seeks an end run around the Apex Deposition Doctrine, which protects corporate leaders from corporate depositions designed to harass.  Notably, Sunbelt also issued a document and corporate-designee deposition subpoenas to EquipmentShare in the *Love* Litigation, both of which attached as <u>Exhibit B</u>.  Despite its non-party status in the *Love* Litigation, EquipmentShare has produced responsive materials and agreed to produce a corporate representative for deposition.

*Second*, the Subpoenas unduly burden Mr. Schlacks, a non-party, by seeking information that is available from a party to the underlying litigation.  Namely, they seek communications between defendant Michael Love (a party) and Mr. Schlacks (a non-party).  Sunbelt should obtain those communications from Mr. Love, who is subject to party discovery in the underlying litigation.

*Third*, the Document Subpoena contains an unreasonable time for compliance.  It was served on September 20, 2021, and demands compliance by September 27, 2021, only five business days later.

 For these reasons, and as further detailed herein, the Subpoenas should be quashed, and Sunbelt should also be ordered to pay Mr. Schlacks's attorney fees.

## BACKGROUND

Sunbelt has a long history of suing its former employees, with mixed results. *See, e.g., Sunbelt Rentals, Inc. v. Victor*, Case No. C 13-4240 SBA, 2014 WL 492364 (N.D. Cal. Feb. 4, 2014) (finding no prohibition on defendant working for competitor Ahern); *Sunbelt Rentals, Inc. v. McAndrews*, Civ. No. 3:21cv774, 2021 WL 3417958 (D. Conn. Aug. 5, 2021) (finding no prohibition on defendant working for competitor Riggs Distler); *Sunbelt Rentals, Inc. v. Spring*,

Case No. 3:18-cv-334, 2018 WL 11241773 (E. D. Tenn. Nov. 19, 2018) (finding no prohibition on defendant working for competitor Franklin Equipment outside of a proscribed territory).

Sunbelt has recently set its sights on EquipmentShare, a Missouri-based equipment rental company that competes with Sunbelt in certain jurisdictions. Sunbelt's campaign against EquipmentShare began with filing lawsuits against former Sunbelt employees around the country who came to work for EquipmentShare, including in jurisdictions such as Maryland, Georgia, Kansas, and New Jersey. After being threatened with groundless claims, one former Sunbelt employee who came to work at EquipmentShare took the initiative to sue Sunbelt in Louisiana, winning a declaratory judgment that the non-compete clause contained in Sunbelt's employment contracts is unenforceable. *See generally Daniel v. Sunbelt Rentals, Inc.*, Civil No. 2:21-cv-00580-MLCF-KWR (E.D.L. April 28, 2021). For the most part, however, Sunbelt has sought out and sued employees who came to EquipmentShare, and not vice versa.

Mr. Love, a California resident with an employment contract with Sunbelt, was one such former employee. *See Love* Litigation [Dkt. No. 14] (Transcript of Show Cause Hearing on Temporary Restraining Order). Sunbelt claimed that his brief employment with EquipmentShare violated noncompetition clauses in his employment contract with Sunbelt, which Sunbelt further alleged were nationwide in scope. *Id.* Mr. Love claimed that the clause was limited to a fifty-mile radius of Paulsboro, New Jersey. *Id.* And, while not immediately relevant here, EquipmentShare understood that Mr. Love's non-compete agreements were invalid as to a California resident. *See, e.g., Arkley v. Aon Risk Servs. Co., Inc.*, at *5 (C.D. Cal. June 13, 2012) (declining to apply Illinois law to restrictive covenant with Illinois choice of law provision because it "creates a conflict with a fundamental policy of California law. … Such covenants are specifically unenforceable

under California Business and Professions Code § 16600. It is beyond dispute that the policy underlying § 16600 is considered "fundamental.").

After being informed that a temporary restraining order had been entered against Mr. Love by the Court prohibiting him from continuing to work for EquipmentShare, EquipmentShare immediately terminated Mr. Love's employment in order to comply with the Court's Order. *Love* Litigation [Dkt. No. 14].  Inexplicably, despite EquipmentShare's immediate and unconditional compliance with every order the *Love* Court has entered respecting Mr. Love's employment contract with Sunbelt, Sunbelt nevertheless decided to sue EquipmentShare in the District of New Jersey, alleging that it tortiously interfered with Mr. Love's employment contract.  *See Sunbelt Rentals, Inc. v. EquipmentShare.com, Inc.*, Case No. 1:21-cv-06511-RMB-AMD (D.N.J. filed Mar. 24, 2021) (the "*EquipmentShare* Litigation").  Discovery is has not yet begun in the *EquipmentShare* Litigation, further exacerbating the impropriety of the instant Subpoenas.  *Id.*

As the CEO of EquipmentShare, Mr. Schlacks was aware of both the hiring and unfortunate forced termination of Mr. Love.   He has no unique personal knowledge or documentation, however, of the circumstances of Mr. Love's hiring, termination, or employment with EquipmentShare that would not be known to, or in the possession of, Mr. Love himself, or EquipmentShare.

Moreover, upon information and belief, Sunbelt has already had extensive opportunities to obtain discovery from party defendant Mr. Love in the *Love* Litigation, including via written discovery, document productions, deposition testimony, and witness testimony.  *See Love* Litigation [Dkt. No. 14](Transcript of Show Cause Hearing on Temporary Restraining Order). Nonetheless, Sunbelt now seeks the exact same information from Mr. Schlacks in his individual capacity, rather than as an executive of EquipmentShare.  *See*, *infra*, at Legal Argument, Section

4

I.  Upon information and belief, Sunbelt is also trying to serve identical harassing subpoenas upon Mr. Schlacks's wife, Danielle Schlacks ("Mrs. Schlacks") in her personal capacity.[1]  Mrs. Schlacks is also an employee of EquipmentShare.

Significantly, Sunbelt's attempts to serve Mr. and Mrs. Schlacks with these Subpoenas, both of which require compliance in St. Louis, come only *after* Mr. and Mrs. Schlacks previously moved to quash two other subpoenas *duces tecum* in the Eastern District of Pennsylvania.  After being reminded via the Schlacks's first motion to quash that Rule 45 of the Federal Rules of Civil Procedure does not permit mailing subpoenas to non-parties and requiring compliance thousands of miles away from their homes, Sunbelt willingly withdrew those subpoenas—only to re-serve a subpoena *duces tecum* on Mr. Schlacks after remediating some of the original's more obvious facial defects.  *See* FED. R. CIV. P. 45(c)(1)(A); *see also In re: Motion to Quash Subpoenas Sent to Jabbok and Danielle Schlacks*, Misc. Case No. 2:21-mc-00060 (E.D. Pa. filed August 11, 2021). This time, Sunbelt threw in the Deposition Subpoena as well, demonstrating the purpose of harassment that has remained static across all of the subpoenas served upon the Schlacks.

## LEGAL ARGUMENT

As is detailed below, the Subpoenas should be quashed because:  (i) they are intended to harass Mr. Schlacks as EquipmentShare's CEO, rather than serve any legitimate discovery purpose, as they seek EquipmentShare's corporate records rather than any materials unique to Mr. Schlacks and seek to circumvent the Apex Deposition Doctrine; (ii) seek information that can and should be sought from the party defendant (Mr. Love); and (iii) the Document Subpoena provides

---

[1]     Mrs. Schlacks was served with a subpoena issued in the *Love* litigation on September 8, 2021, which demanded compliance on August 23, 2021, **sixteen days prior to service**. Acknowledging the facial deficiency in that subpoena, Sunbelt's counsel has signaled that it intends to properly serve a corrected subpoena on Mrs. Schlacks but, upon information and belief, that has not yet occurred.

an unreasonable time for compliance, giving Mr. Schlacks only five business days to execute and produce an ESI search of EquipmentShare's corporate records – improperly sought from him in his individual capacity rather than being sought through EquipmentShare.

For all of these reasons, the Subpoenas should be quashed and Sunbelt should be ordered to pay Mr. Schlacks's attorney fees incurred in quashing these improper Subpoenas.

## I.     **The Subpoenas Are Intended to Harass Mr. Schlacks.**

Although the Federal Rules of Civil Procedure permit liberal discovery, it "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34, 104 S.Ct. 2199 (1984). Because of the high "potential for abuse," district courts have broad authority to quash subpoenas that "subject[] a person to undue burden." *See Misc. Dkt Matter #1 v. Misc. Dkt Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999) *quoting* FED. R. CIV. P. 45(d)(1). Attempting to depose a CEO of a non-party corporation for purposes of harassment is one example of undue burden. *See generally id.* (quashing a deposition subpoena of a CEO issued for apparent purposes of harassment).

Both Subpoenas are designed to harass Mr. Schlacks because there is no legitimate reason that justifies serving him in his personal capacity. The Document Subpoena plainly seeks EquipmentShare's corporate records and documents in the possession of Mr. Love, rather than any information uniquely in the possession of Mr. Schlacks. For example, it seeks "all communications" between Messrs. Schlacks and Love (as well as several other listed EquipmentShare employees, including Mrs. Schlacks and all other former Sunbelt employees) regarding the following items:

- Mr. Love's recruitment or hire by EquipmentShare;

- Mr. Love's "job title, job duties, customer base, and geographic territory," and "equity interest or potential equity interest"  at EquipmentShare;

- Mr. Love's "customers and potential customers;"

- "Sunbelt documents *in the possession of Mr. Love*;"

- EquipmentShare's expansion into Philadelphia and New Jersey;

- Mr. Love's interaction with other former Sunbelt employees; and

- Everything else "in which Michael Love was mentioned in any way."

*See* <u>Exhibit A</u> (emphasis added).

As further detailed in Section II of this brief, and as emphasized above, all or almost all of these documents are available from Mr. Love.

Further, all of these categories of documents—which at best are ***corporate records of EquipmentShare***—should be sought from EquipmentShare, not Mr. Schlacks individually.  Even though discovery has not yet begun in the *EquipmentShare* Litigation, EquipmentShare has willingly produced documents and has also agreed to produce a corporate designee for deposition in the *Love* Litigation.

The Apex Deposition Doctrine exists specifically to guard against these types of discovery abuses.  *See Drake v. Steak N Shake Ops., Inc.*, Case No. 4:14-cv-01535-JAR, 2018 WL 3625769 at *1 (E.D. Mo. July 30, 2018) ("*Steak N Shake*"); *compare also Lutzier v. Citigroup, Inc.*, No. 4:14-cv-00183-RLW, 2015 WL 430196 at *7 (E.D. Mo. Feb. 2, 2015) ("*Lutzier*") (denying request that high-level executives from defendant corporation be added to ESI custodian list).

In *Steak N Shake*, this Court explained that because "courts are often skeptical of attempts to depose high-level corporate executives in light of the increased risk of harassment or abuse directed at a defendant's leadership," the Apex Deposition Doctrine requires that a specific test be

met before such depositions will be permitted. *Steak N Shake*, at *1; *see also Ingersoll v. Farmland Foods, Inc.*, No. 10-6046-CV-SJ-FJG, 2011 WL 1131129, at *7 (W.D. Mo. Mar. 28, 2011) ("*Ingersoll*"); *Lutzier*, at *7.  First, the plaintiff must show that the executive to be deposed "has unique or special knowledge of the facts at issue." *Steak N Shake*, at *1.  Second, the plaintiff must show that "other less burdensome avenues for obtaining the information sought have been exhausted." *Id.*

Here, where the *CEO of a non-party*—to which the plaintiff plainly bears significant animosity—is sought to provide deposition testimony, the risk of harassment and abuse is at its "apex."  Sunbelt cannot show that it has exhausted all "less burdensome avenues" before seeking to depose Mr. Schlacks: it has been given an opportunity to cross-examine Mr. Love and will shortly be deposing an EquipmentShare corporate designee.

Nonetheless, Sunbelt served these Subpoenas on Mr. Schlacks and, upon information and belief, continues attempting to serve Mrs. Schlacks as well.

Both harassing Subpoenas should be quashed as abuses of the discovery process.

## II.    The Subpoenas Unduly Burden Mr. Schlacks with Party Discovery.

In addition to harassing Mr. Schlacks, the Subpoenas place an undue burden upon him. Non-party status is an important consideration in weighing whether a subpoena imposes an undue burden. *See e.g., Am. Standard Inc. v. Pfizer Inc*., 828 F.2d 734 (Fed. Cir. 1987) (affirming district court's restriction of discovery where non-party status "weigh[ed] against disclosure"); *Am. Electric Power Co., Inc. v. U.S.*, 191 F.R.D. 132,136 (S.D. Ohio 1999) (status as a non-party is a factor that weighs against disclosure); *Solarex Corp. v. Arco Solar, Inc*., 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (same).

Where, as here, subpoenas *duces tecum* ask non-parties to produce information available from a party, they should generally be quashed as unduly burdensome. *See generally Ingersoll, supra* (explaining that non-party discovery is strongly disfavored if the same discovery is available from the parties)*; see also In re: Cantrell v. U.S. Bioservices Corp.*, No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011 (W.D. Mo. Apr. 21, 2009) ("*Cantrell*").

In *Cantrell*, the court quashed a subpoena *duces tecum* when the non-party recipient alleged that the search would be costly and both parties agreed that all of the "documents requested could be first sought from the party defendants," finding that "[u]nder the circumstances, the subpoena would impose an undue burden on a non-party." *Id.* quoting *Haworth v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed.Cir. 1993) (upholding district court's quashing of subpoena when the same information was available from party defendants); *see, also e.g., Genus Lifesciences v. Lannett Co.*, 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) (quashing a subpoena where plaintiff had not first sought the requested information from a party to the litigation).

Unlike the Deposition Subpoena, which identifies no topics upon which Mr. Schlacks is to be deposed, the Document Subpoena requests three categories of documents, as discussed in detail above.  The <u>first</u> category seeks communications between Mr. Love and Mr. Schlacks, all of which would be available to Sunbelt directly from Mr. Love.  The <u>second</u> category seeks documents concerning Mr. Love's employment with Sunbelt and his employment by EquipmentShare, all of which would also be available to Sunbelt directly from Mr. Love. The <u>third</u> category seeks all communications with any other former Sunbelt employees in which Mr. Love's name appears. Only this third category of documents *might* not be available directly from Mr. Love, but they are already the subject of a subpoena in the *Love* litigation that was served on EquipmentShare.

The vast majority, if not all, of the information requested in the Document Subpoena should be, and upon information and belief, has been, both sought and obtained from Mr. Love in the *Love* Litigation. There is no evidence or allegation that Sunbelt has been unable to previously obtain the discovery sought in the Document Subpoena from Mr. Love, and there certainly can be no allegation that they are unavailable from EquipmentShare **because to the extent such documents exist, they would be EquipmentShare's corporate records and are covered by the subpoena served by Sunbelt on EquipmentShare**.

Further, to the extent that Sunbelt may hope to use these records to build a case against either Mr. Schlacks or EquipmentShare in a separate litigation, such purpose is wholly improper. *See Ingersoll*.  In *Ingersoll*, the court quashed document and deposition subpoenas served upon non-party Smithfield Foods, on the basis that:

> [W]hile non-party discovery can be undertaken, at this point in time there is no indication that plaintiffs cannot get the same or similar information from defendant Farmland . . . **the Court notes that it is left with the firm impression that the primary reason plaintiffs are seeking discovery against Smithfield Foods is in an attempt to build a case against Smithfield Foods (not to aid their case against defendant). This is improper.**

*Id.* at *8 (emphasis added) *citing* Advisory Comm.'s Notes to FED. R. CIV. P. 26(b)(1).

Similarly, here, to the extent that the documents and deposition sought from Mr. Schlacks have any relevance whatsoever to Sunbelt's litigation strategy, both appear targeted towards building a legal case against non-party EquipmentShare, rather than a case against Mr. Love.

For example, seeking information regarding Mr. Love's "recruitment or hire by EquipmentShare," *see* <u>Exhibit A</u>, is plainly targeted towards Sunbelt's tortious interference claim against EquipmentShare in the *EquipmentShare* Litigation, and not towards discovering whether Mr. Love engaged in any tortious behavior.  This information can be, and should be, sought directly from EquipmentShare in the *EquipmentShare* Litigation, not Mr. Schlacks in the *Love* Litigation.

Because Sunbelt has made no allegation that it has been unable to obtain such discovery from the party defendant in the *Love* Litigation, much less the party defendant in the *EquipmentShare* Litigation (discovery not yet being allowed in that case), it is unduly burdensome for Sunbelt to seek this information from Mr. Schlacks in his individual capacity.

### III.     The Subpoena *Duces Tecum* Contains An Unreasonable Time for Compliance.

Under Rule 45 of the Federal Rules of Civil Procedure, "the court for the district where compliance is required must quash or modify a subpoena that," *inter alia*, "fails to allow a reasonable time to comply." FED. R. CIV. P. 45(d)(3)(A)(i).  These Subpoenas were served on Mr. Schlacks on Monday, September 20, 2021.  As detailed herein, the Document Subpoena demanded that Mr. Schlacks execute *a full ESI search of EquipmentShare's corporate records, not his own,* and produce them within five business days, on September 27, 2021.

The Document Subpoena should be quashed because it failed to allow Mr. Schlacks a reasonable time to comply with it, and Sunbelt should be sanctioned for issuing the Subpoenas in a manner designed to harass and unduly burden Mr. Schlacks.

### IV.     Sunbelt Should Be Sanctioned.

As fully detailed above, Sunbelt has unduly burdened and harassed Mr. Schlacks by serving him with the Subpoenas.

An "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena," and where such attorney fails to do so, it is appropriate to award sanctions including "lost earnings and reasonable attorney's fees."  FED. R. CIV. P. 45(d)(1).  Given the well-established "preference for parties to obtain discovery from one another before burdening non-parties with discovery requests," *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases), it is

11

appropriate for the Court to impose an award of attorneys' fees to Mr. Schlacks for the monies incurred in quashing this subpoena.

Because these Subpoenas are designed to harass Mr. Schlacks, unduly burden him with party discovery for an improper purpose, and provided him insufficient time for effective compliance, they should be quashed and Sunbelt should be sanctioned by being ordered to pay Mr. Schlacks's reasonable attorney fees.

## CONCLUSION

For the foregoing reasons, non-party Jabbok Schlacks respectfully requests that this Court quash the Subpoenas attached hereto as Exhibit A, order Sunbelt to pay Mr. Schlacks's reasonable attorneys' fees, and grant such other relief as this Honorable Court deems to be reasonable, appropriate, and just.

Dated September 27, 2021.                    Respectfully submitted,

/s/ Matthew W. Geary
Matthew W. Geary       MoBarED#53328MO
  mgeary@dysarttaylor.com
DYSART TAYLOR COTTER McMONIGLE
& BRUMITT, P.C.
4420 Madison Avenue, Suite 200
Kansas City, MO 64111
Tel: (816) 714-3030

Torsten M. Kracht *(pending pro hac vice)*
  tkracht@huntonAK.com
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
Tel: (202) 419-2149

Christopher M. Pardo *(pending pro hac vice)*
  cpardo@huntonAK.com
HUNTON ANDREWS KURTH LLP
60 State Street, Suite 2400
Boston, MA 02109
Tel: (617) 648-2800

## CERTIFICATE OF SERVICE

I, Matthew Geary, certify that on September 27, 2021, I caused to be served a true and correct copy of the foregoing document on the following parties by CM/ECF filing pursuant to Federal Rule 5(b)(2)(E):

Michael S. Pepperman
Matthew A. Green
Ivo J. Becica
Obermayer Rebmann Maxwell & Hippel LLP
1120 Route 73, Suite 420
Mount Laurel, New Jersey 08054

*Attorneys for Plaintiff Sunbelt Rentals, Inc.*

Kevin H. Marino
John A. Boyle
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488

KAUFMAN, COREN & RESS, P.C.
Steven M. Coren
Andrew J. Belli, Esquire
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103

*Attorneys for Defendant Michael Love*

/s/ Matthew W. Geary
Matthew W. Geary